UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DARON JONES,

                Plaintiff,                Case No. 1:13-cv-490

v.                                                      Honorable Robert J. Jonker

ROBERT CROMPTON et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff, Daron Jones, is a state prisoner presently incarcerated at the Ionia Correctional Facility, though the actions about which he complains occurred while he was housed at the Oaks Correctional Facility (ECF). He sues the following ECF health care providers: Dr. Robert Crompton, M.D. and Registered Nurses Patricia Lamb, Rick Bookheimer and Nicki Monroe.

Plaintiff alleges that Defendant Crompton violated his Fourteenth Amendment privacy rights by disclosing his confidential medical information to non-medical staff and other prisoners. Specifically, Plaintiff alleges that on three occasions Defendant Crompton came to Plaintiff's cell to obtain his signature on a form acknowledging that he refused to accept treatment for HIV. Each time Defendant Crompton came to Plaintiff's cell, he brought a different member of the custody staff who, in turn, learned about Plaintiff's HIV status. Plaintiff alleges that Defendant Crompton brought different custody staff members on every visit in order to degrade and humiliate him. Plaintiff contends that custody staff "always tell [sic] prisoners which causes all kind [sic] of other issues." (docket 1, Page ID#5.)[1] Additionally, Plaintiff alleges that Defendants Lamb, Bookheimer and Monroe were made aware, via the grievance process, of Plaintiff's concerns regarding Defendant Crompton's behavior and the disclosure of his HIV status, but "approved of this violation." *Id.* Plaintiff seeks nominal and punitive damages.

---

[1] Plaintiff attaches as an exhibit to his complaint a memo he sent to the Ombudsman requesting an investigation into the disclosure of his HIV status. In the memo, Plaintiff states that after his HIV status was disclosed he was called an "AIDS Infested Bitch" and that disclosure of his HIV status "jeopardized [his] safety [and] also effected [him] mentally." (docket #1, Page ID#5.)

**Discussion**

I.  Legal Standard

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

> II. <u>Plaintiff Fails to State a Claim Against Defendants Lamb, Bookheimer and Monroe.</u>

Plaintiff fails to make specific factual allegations against Defendants Lamb, Bookheimer and Monroe, other than his claim that they "approved" of Defendant Crompton's behavior and the disclosure of Plaintiff's HIV status.[2] Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff

---

[2]A private party is a "state actor" when the actions of the party are "fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). A health care provider authorized to treat prison inmates is "'a person who may fairly be said to be a state actor.'" *West v. Atkins*, 487 U.S. 42, 55 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The Court assumes, without deciding, that Defendants are "state actors."

has failed to allege that Defendants Lamb, Bookheimer or Monroe engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### III. Plaintiff Fails to State a Claim Against Defendant Crompton.

Plaintiff claims that Defendant Crompton disclosed his personal information in violation of his right to privacy under the Fourteenth Amendment

> Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions," *Whalen v. Roe*, 429 U.S. 589, 599-600 & n.26, 97 S.Ct. 869, 51 L.Ed.2d 405 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education." (quoting *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 869, 51 L.Ed.2d 405 (1976)). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id*. at 599, 603-04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists).

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). Plaintiff's claim implicates the latter interest, i.e. the "individual's right to control the nature and extent of information released about that individual," which "has been coined an informational right to privacy." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

In *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), the Sixth Circuit reviewed the Supreme Court's opinions regarding the right to privacy, including *Whalen*, *Nixon*, and *Paul*, and concluded that "the Constitution does not encompass a general right to nondisclosure of private

information." *Id*. at 1087-90. The court declined to "recognize a general constitutional right to have disclosure of private information measured against the need for disclosure," reasoning that "[t]he Framers . . . cannot have intended that the federal courts become involved in an inquiry nearly as broad balancing almost every act of government . . . against its intrusion on a concept so vague, undefinable, and all-encompassing as individual privacy." *Id*. at 1089-90. Consequently, the Sixth Circuit restricts the constitutional right to informational privacy to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id*. at 1090 (citations omitted). "Only after a fundamental right is identified should the court proceed to the next step of the analysis – the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." *Lambert*, 517 F.3d at 440.[3]

Applying these standards, the Sixth Circuit has repeatedly rejected claims asserting a constitutional right to nondisclosure of personal information. *See, e.g.*, *Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) (city's requirement that employees returning from sick leave disclose the nature of their illness to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270-71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (school's

---

[3]In contrast to the Sixth Circuit, other circuits hold that the disclosure of some kinds of personal information requires the court to balance the government's interests in disclosure against the individual's interest in avoiding disclosure. *See, e.g.*, *Barry v. New York*, 712 F.2d 1554, 1559 (2d Cir. 1983); *Fraternal Order of Police v. Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987); *Woodland v. Houston*, 940 F.2d 134, 138 (5th Cir. 1991) (per curiam); *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999). Although the Supreme Court recently contrasted the holding in *DeSanti* with the approach taken in the foregoing opinions, the Court declined to clarify the scope of a constitutional right to informational privacy. *See NASA v. Nelson*, ___ U.S. ___, 131 S.Ct. 746, 755-57 & n.9 (2011) (assuming, without deciding, that such a right existed in that case).

disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455-57 (6th Cir. 2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *DeSanti*, 653 F.2d at 1091 (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, as in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) (dissemination of undercover officers' personnel file to members of violent street gang some of whom officers testified against at trial); and (2) where the information released was of a "sexual, personal, and humiliating nature," as in *Bloch*, 156 F.3d at 684 (nonconsensual disclosure at press conference of details of plaintiff's rape).

In *Lee*, the plaintiff challenged a city's policy requiring its employees to disclose the nature of their illness to their immediate supervisors after taking sick leave. *Id*. at 261. The court noted that it had "not yet confronted circumstances involving the disclosure of medical records that, in [its] view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution." *Id*. The court upheld the policy, reasoning that it did not "implicate the preservation of life and personal security interests recognized in *Kallstrom*, or the interest in shielding sexuality and choices about sex, protected in *Bloch*." *Id*.

In a case similar to the instant one, the Sixth Circuit determined that the disclosure of an inmate's HIV-positive status to prison guards did not violate the inmate's rights under the Fourteenth Amendment. *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (holding that the plaintiff's claim "is foreclosed by the letter and reasoning" of *DeSanti* ). *But see Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010) (distinguishing *Wigginton* and holding that an inmate has a constitutionally-protected interest in avoiding disclosure of his HIV-positive status to other inmates, subject to legitimate penological interests).

The logic of *DeSanti*, *Wigginton* and *Lee* forecloses Plaintiff's Fourteenth Amendment claim because the disclosure alleged by Plaintiff does not implicate a fundamental interest. There is no relevant distinction between the disclosure of an inmate's HIV status to prison guards, which the Sixth Circuit has held does not implicate a fundamental interest, *Wigginton*, 21 F.3d at 740, and the disclosure to other prisoners and prison officials as Plaintiff alleges here. *See, e.g., Coleman v. Martin,* 63 Fed. App'x. 791, 792 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board does not state a claim for relief under § 1983); *Holden v. Michigan Dep't of Corr.*, 2012 WL 2317538 at 5 (W.D. Mich. June 18, 2012) (no Fourteenth Amendment violation where Plaintiff alleged that prison employee disclosed his HIV status to other prison officials and inmates); *Reeves v. Engelsgjerd,* 2005 WL 3534096 at 4 (E.D. Mich. Dec. 23, 2005) (doctor did not violate prisoner's constitutional rights by discussing his medical condition with non-medical staff and in front of other inmates).

To the extent that *Moore* favors a different result, that decision is neither binding nor persuasive in light of other published Sixth Circuit authority both predating *Moore* (*Wigginton*), and post-dating *Moore* (*Lee*). *Moore* does not employ the fundamental-interest analysis required by

*DeSanti*, *Lambert*, *Bloch*, and *Lee*, nor does it cite any Sixth Circuit opinion in support of its holding. Instead, it expressly adopts the reasoning of the Third Circuit in *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001). *See Moore*, 379 F. App'x at 427 ("'It is beyond question that information about one's HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information.'") (quoting *Delie*, 257 F.3d at 317)). However, as the *Delie* court recognized, the Sixth Circuit's decisions in *Wigginton* and *DeSanti* conflicted with its own. *Delie*, 257 F.3d at 319 n.7; *see Moore*, 379 F. App'x at 429 (Kethledge, J., dissenting). Even if the Court accepts the finding in *Moore* and *Delie* that a prisoner has an "interest" in protecting against disclosure of his HIV status to other inmates, it does not necessarily follow that such an interest is one of "constitutional dimension." *See Lambert*, 517 F.3d at 440.

In accordance with *DeSanti*, *Wigginton* and *Lee*, Plaintiff does not state a Fourteenth Amendment claim because the disclosure of his HIV status as alleged here does not implicate a fundamental interest protected by the right to privacy under the Fourteenth Amendment.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:    August 1, 2013              /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     UNITED STATES DISTRICT JUDGE